HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ASHLEY MINAEI,

    Plaintiff,

  v.

UNIVERSITY OF WASHINGTON
SCHOOL OF MEDICINE AND
DEAN PAUL RAMSEY,

    Defendants.

CASE NO. C17-276 RAJ

ORDER

This matter comes before the Court on Defendants' motion for summary judgment. Dkt. # 12. Plaintiff opposes the motion. Dkt. # 23. For the reasons that follow, the Court **GRANTS** the motion.

## I.    BACKGROUND

This case arises from Plaintiff's dismissal from the University Of Washington School Of Medicine ("Medical School"). Plaintiff was part of the Medical School's Washington, Wyoming, Alaska, Montana, and Idaho (WWAMI) program. Dkt. # 13-1 at 5. As a WWAMI participant, Plaintiff was expected to complete her first year of medical school in Alaska, and then transfer to the Medical School in her second year. *Id.* at 7.

"[T]he goal of the program is to recruit students who will return to their home state to practice medicine." *Id.* at 5.

In her first year of medical school, Plaintiff failed Introduction to Immunology and Nervous System. Dkt. # 16-1 at 3. The Medical School authorized Plaintiff to retake these exams but warned her that "two or more Fail grades within an academic year" is grounds for academic probation. *Id.* at 23. Plaintiff explained that her Attention Deficit Disorder and test anxiety overwhelmed her, making it difficult to perform at her best on exams. Dkt. ## 14-1 at 9, 16-1 at 3, 23-5 at 2. The Medical School's Associate Dean of Student Affairs, Dr. Eacker, encouraged Plaintiff to seek accommodations for future exams based on these initial grades and in light of Plaintiff's disabilities. Dkt. # 16-1 at 26.

Plaintiff successfully sought accommodations for her future exams; the Medical School authorized Plaintiff fifty-percent additional time on each test as well as a reduced distraction environment. *Id.* at 41. These accommodations were precisely what Plaintiff and her physician discussed and agreed would be effective. Dkt. ## 13-1 at 121-123, 23-5 at 2. The Medical School could not implement the accommodations in time for Plaintiff's Hematology exam, but did so for her Epidemiology exam. Dkt. # 14-1 at 12. Plaintiff failed both. Dkt. # 16-1 at 72.

Medical School faculty met with Plaintiff in February 2014 to discuss expanding Plaintiff's second year of medical school. *Id.* at 44-45. Plaintiff "prefer[red] not to add more years onto medical school," but she recognized that this option was more favorable than the alternative—that is, Plaintiff wished to remain in medical school rather than face dismissal. *Id.* Plaintiff conceded that "spread[ing] [her] classes out over two years . . . would address a lot of the issues that bring up [her] anxiety." *Id.* at 44.

In April 2014, the Student Progress Sub-Committee reviewed Plaintiff's record and performance—at this time, Plaintiff had also failed Skin System and Respiratory System—and recommended her dismissal from the Medical School. *Id.* at 49. Plaintiff

requested a review of the decision, and successfully lobbied for a reversal of the decision. *Id.* at 57. Therefore, Plaintiff remained a student at the Medical School but was warned that "any further difficulties put [her] at risk of dismissal." *Id.*

Plaintiff retook the Respiratory System course in Fall 2014 and failed the exam a second time. *Id.* at 72. The student handbook warned students that if they received "a Fail grade in a repeated course, this is grounds for dismissal." *Id.* at 11. In light of Plaintiff's second failure in Respiratory System despite being on an expanded schedule, and taking her entire record into consideration, the Student Progress Committee once again recommended that Plaintiff be dismissed from the program. *Id.* at 59. Plaintiff sought review of the decision, *id.* at 61, but the Committee "concluded that [Plaintiff] failed to meet the School of Medicine's academic standards" and therefore sustained its dismissal recommendation, *id.* at 63. By this time, Plaintiff had failed eight courses.[1] In June 2015, the Dean of the Medical School accepted the Student Progress Committee's recommendation and formally dismissed Plaintiff from the program. *Id.* at 69. This lawsuit followed.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail

---

[1] Plaintiff was able to pass Immunology and Nervous System upon remediation. Dkt. # 1-2 (Complaint) at ¶ 58. These initial fail grades resulted in Plaintiff being placed on academic probation. Dkt. # 16-1 at 23, 30.

merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

**III.  DISCUSSION**

A. <u>Disability Discrimination</u>

Plaintiff alleges a claim for disability discrimination under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (ADA). Dkt. # 1-2 (Complaint) at ¶ 284. "To make out a prima facie case under either the ADA or Rehabilitation Act [a plaintiff] must show that (1) she is disabled under the Act; (2) she is 'otherwise qualified' to remain a student at the Medical School, i.e., she can meet the essential eligibility requirements of the school, with or without reasonable accommodation; (3) she was dismissed solely because of her disability; and (4) the

Medical School receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim)." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999). The parties do not dispute that Plaintiff is disabled or that the Medical School is a public entity that receives federal financial assistance. Dkt. # 12 at 10. However, Defendants argue that Plaintiff was not qualified to remain a student at the Medical School and that she was not dismissed due to her disability. *Id.*

To prove that she was qualified to remain a student at the Medical School, Plaintiff must show that she met the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by" the Medical School with or without reasonable accommodations. 42 U.S.C.A. § 12131; *see also Zukle*, 166 F.3d at 1046. Under both the ADA and the Rehabilitation Act, the Medical School was required to reasonably accommodate Plaintiff but was not required to fundamentally alter the nature of its program. *See Alexander v. Choate*, 469 U.S. 287, 300 (1985) ("Such a 'fundamental alteration in the nature of a program' was far more than the reasonable modifications the statute or regulations required.") (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 410 (1979)); *see also Zukle*, 166 F.3d at 1046.

Plaintiff did not meet the essential eligibility requirements to remain at the Medical School. Before implementing accommodations, Plaintiff did not pass Introduction to Immunology, Nervous System, Respiratory System, Skin System, and Hematology. Dkt. # 23-1 at ¶¶ 10, 28, 44, 47. Even with reasonable accommodations, Plaintiff could not meet the essential eligibility requirements to remain at the Medical School. After receiving fifty-percent extra time and a private testing space, Plaintiff failed Epidemiology. Dkt. ## 14-1 at 12 (implementing accommodations for the Epidemiology final), 47 at ¶ 47 (conceding that Plaintiff failed Epidemiology). Moreover, after expanding her second year of medical school to allow for a reduced course load, Plaintiff retook the entire Respiratory System course—rather than retaking only the exam—and failed a second time. Dkt. # 16-1 at 72. Together these facts were

enough to warrant dismissal. *Id.* at 11 ("If a student receives a Fail grade in a repeated course, this is grounds for dismissal."), 15 ("Two or more Fail grades within an academic year warrant placement on probationary status and may result in a dismissal recommendation."). The Medical School had already reversed a decision to dismiss Plaintiff, but in light of her continued inability to pass classes the Medical School formally dismissed Plaintiff from the program. *Id.* at 59, 63.

The record shows that the Medical School provided accommodations to meet Plaintiff's needs. Dkt. ## 13-1 at 121-125 (Plaintiff and Dr. Dugdale discuss the accommodations necessary to aid Plaintiff), 23-2 at 10 (in a later evaluation, Dr. Powel recommended that Plaintiff have fifty-percent additional time to take exams and be allowed to enlarge the font on computer screens). Specifically, allowing her extra time on exams and the use of private exam spaces—and eventually an expanded schedule—were reasonable accommodations for her disabilities. Moreover, even though Plaintiff did not specifically request it, she had the ability to enlarge the font on computer screens when taking computer exams. Dkt. # 25-1 at 4. The record does not indicate any recommendations or discussions regarding Plaintiff's ability to wholly avoid computer exams, and therefore this was not an accommodation that the Medical School was required to implement based upon the information presented to it.

The record further shows that the Medical School engaged in good faith in an interactive process with Plaintiff. *Patton v. Phoenix Sch. of Law LLC*, No. CV-11-0748-PHX-GMS, 2011 WL 1936920, at *4 (D. Ariz. May 20, 2011) (finding that "an educational institution's 'obligation to engage in an interactive process with the [student] to find a reasonable accommodation is triggered by [the student] giving notice of the [ ] disability and the desire for accommodation.'") (quoting *Downey v. Crowley Marine Servs., Inc.*, 236 F.3d 1019, 1023 n.6 (9th Cir. 2001); *see also Pasatiempo v. England*, 125 F. App'x 794, 796 (9th Cir. 2005) (finding that defendant "acted in good faith in the interactive process"). Communications between Medical School staff and Plaintiff show

that the Medical School attempted to discover the best accommodations in light of Plaintiff's disabilities, and it worked to find a solution that would keep Plaintiff in the program. *See, e.g.*, Dkt. # 16-1 at 36-47 (email communications between Medical School faculty and Plaintiff).

Ultimately, Plaintiff has not carried her burden in this matter to prove that she could meet the Medical School's essential eligibility requirements. *See Zukle*, 166 F.3d at 1048. Plaintiff has demonstrated that she is passionate about her medical studies and noble desire to return to Alaska to aid her community. But her passion and desire do not match the expectations and requirements of the Medical School. It is not for this Court to opine on the current status of medical education or make institutional determinations; the Court may only apply the law, as it currently stands, to Plaintiff's circumstances. For this reason, the Court cannot grant Plaintiff the relief she seeks and must grant Defendants' summary judgment on the disability discrimination claims.

B. <u>Gender Discrimination</u>

To prove her gender discrimination claim, Plaintiff must show that (1) she belongs to a protected class, (2) she performed satisfactorily as a student, (3) she was subjected to an adverse decision, and (4) similarly situated students not in her protected class received more favorable treatment. *Robinson v. Univ. of Washington*, No. C15-1071RAJ, 2016 WL 4218399, at *5 (W.D. Wash. Aug. 9, 2016), *aff'd*, 691 F. App'x 882 (9th Cir. 2017); *see also Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002).[2] If Plaintiff can establish her prima facie case, the burden shifts to the Medical School to prove that it

---

[2] The Court uses the familiar *McDonnell Douglas* burden shifting framework. Numerous courts have held that this framework applies to (or at least informs) analysis of Title IX claims. *See e.g., Bowers v. Bd. of Regents of Univ. of Ga.*, 509 Fed.App'x. 906, 910 (11th Cir. 2013) (applying Title VII framework to assess Title IX disparate treatment claim); *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012) (applying Title VII burden-shifting framework for retaliation claims to Title IX retaliation claim); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 617 n.1 (1999) ("This Court has also looked to its Title VII interpretations of discrimination in illuminating Title IX") (Thomas, J., dissenting).

dismissed Plaintiff for a legitimate, nondiscriminatory reason. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff then has the opportunity to show that the Medical School's stated reason for dismissal is in fact pretext for gender discrimination. *Id.* at 804.

The Court's analysis above informs its analysis here. That is, Plaintiff cannot establish a prima facie case because she cannot show that she performed satisfactorily as a student at the Medical School. Moreover, she offered no evidence showing that similar situated students not in her protected class received more favorable treatment. Her declaration highlights "male, non-disabled students" in a particular course, Dkt. # 23-1 at ¶ 90, but she does not offer evidence that there were similarly situated students—male students with or without disabilities—who failed up to eight courses but retained their status in the Medical School.

Even if Plaintiff could establish a prima facie case, she cannot rebut the Medical School's legitimate, nondiscriminatory reason for dismissal. The Medical School reasonably accommodated Plaintiff and gave her ample opportunities to remain in the program, but ultimately dismissed her according to its own standards outlined in its handbook. Plaintiff offers no evidence that this was pretext for gender discrimination. Accordingly, the Court grants Defendants' motion on Plaintiff's gender discrimination claim.

C. Retaliation

Plaintiff claims the Medical School retaliated against her after she requested reasonable accommodations. Dkt. # 1-2 (Complaint) at ¶ 286. To prove her claim, Plaintiff must establish a prima facie case by showing (1) involvement in a protected activity, (2) an adverse action, and (3) a causal link between the two. *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003). If Plaintiff successfully establishes a prima facie case, the Medical School must show a non-retaliatory explanation for the dismissal. *Id.* Plaintiff may then show that the dismissal was actually pretext for retaliation. *Id.*

Plaintiff cannot establish her prima facie case for retaliation because there is no evidence to suggest that her request for accommodations caused her dismissal. Even if there were such evidence, the Medical School presented a non-retaliatory reason for dismissing Plaintiff. Namely, the record indicates that the Medical School dismissed Plaintiff after she failed a number of classes despite reasonable accommodations. Moreover, Plaintiff cannot show that the Medical School's non-retaliatory reason is pretext. In fact, she presents evidence suggesting the opposite—that the Medical School has accommodated other students' requests without retaliation. Dkt. # 13-1 at 44, 55-60 (discussing other students who required accommodations). There is nothing in the record to support Plaintiff's claim for retaliation, and therefore the Court grants Defendants' motion on this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment. Dkt. # 12.

Dated this 27th day of March, 2018.

The Honorable Richard A. Jones
United States District Judge